USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BASECAP ANALYTICS INC.,

              Plaintiff,

-against-

ROBERT AMENN,

              Defendant.

1:23-cv-09370-MKV

**MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION**

MARY KAY VYSKOCIL, United States District Judge:

This Memorandum Opinion and Order memorializes the Court's ruling at the November 21, 2023 preliminary injunction hearing on this matter. For the reasons stated on the record and that follow, the Court GRANTS Plaintiffs' motion for a preliminary injunction as modified below.

## BACKGROUND

On October 24, 2023, Plaintiff BaseCap Analytics Inc. ("BaseCap") initiated this action by filing a complaint against its former employee, Defendant Robert Amenn ("Amenn"). [ECF No. 1 ("Compl.")]. BaseCap, a producer of data quality software, alleges that, in breach of a Nondisclosure and Invention Assignment Agreement ("NDIAA") that he signed, Amenn improperly accessed and externally transferred BaseCap's confidential information during the final days of his employment, and refused to return or destroy, and to certify that he had returned or destroyed, BaseCap's confidential information. Compl ¶¶ 9, 33, 38–41, 47–51. BaseCap brings claims against Amenn for violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*, common law misappropriation, and breach of contract. Compl. ¶¶ 53–75.

BaseCap's filing of the complaint was accompanied by a motion, brought on by a Proposed Order to Show Cause, for Emergency Injunctive Relief in the form of an *ex parte* temporary restraining order and a preliminary injunction. [ECF No. 5]. On October 26, 2023, the Court

denied BaseCap's motion for an *ex parte* temporary restraining order, finding that such extraordinary relief was not warranted because Amenn had been provided notice and because BaseCap had not shown that immediate and irreparable injury would occur before Amenn could be heard in opposition.  The Court entered a briefing and hearing schedule on the motion.  The Court further ordered that, during the pendency of the motion, "the parties shall preserve in their current state any devices, including cell phones, tablets, laptops, computers, electronic storage media, and access credentials to electronic storage data repositories, that may contain [BaseCap's] trade secrets and proprietary or confidential information, and all data contained therein," effectively granting in part BaseCap's requested temporary restraining order.  [ECF No. 9].  On November 6, 2023, at the request of the parties, the Court adjourned the hearing, modified the briefing schedule, and maintained the ordered interim relief.  [ECF No. 22].

In support of its motion, BaseCap submitted a memorandum of law [ECF No. 7], a Declaration of Steven Smith [ECF No. 7-1 ("Smith Decl.")], a Declaration of Dr. Chuck Easttom [ECF No. 7-3 ("Easttom Decl.")], and related exhibits.  Amenn submitted two memoranda of law in opposition and several exhibits.  [ECF Nos. 21 ("Amenn Mem."), 25 ("Amenn Supp. Mem.")].  BaseCap submitted a reply memorandum of law [ECF No. 34 ("BaseCap Reply")], accompanied by a Reply Declaration of Steven Smith [ECF No. 34-1 ("Smith Reply Decl.")], a Reply Declaration of Wendy R. Stein, Esq. [ECF No. 34-10 ("Stein Reply Decl.")], and several exhibits.

BaseCap seeks a preliminary injunction preventing Amenn:

(1) From directly or indirectly accessing, disclosing, copying, reproducing, or otherwise conveying, disseminating or using BaseCap's trade secrets and proprietary or confidential information, or any Confidential Information (as that term is defined in the August 2019 Non-Disclosure and Invention Assignment Agreement (the "Agreement")) between BaseCap and [Amenn], including, but not limited to, any information accessed, downloaded or copied by [Amenn] (collectively "BaseCap's Trade Secret Information"); and,

> (2) From destroying, damaging or altering in any way, and to immediately return to BaseCap, any and all BaseCap property and BaseCap's Trade Secret Information in whatever form, including by directing [Amenn] to turn over to BaseCap (a) for forensic preservation, inspection, and analysis—at [Amenn's] sole expense—all laptops, computers, and other electronic storage media and access credentials to electronic data repositories in [Amenn's] possession, custody, or control that [Amenn] used during or after his employment with BaseCap, so as to recover from [them] all BaseCap's Trade Secret Information in such repositories and then destroy all such data before returning access or possession to [Amenn], and (b) all copies of non-electronic data of BaseCap in [Amenn's] possession, custody and control.

BaseCap Mem. 2. Amenn consents to the requested injunctive relief except for element (2)(a) regarding the turnover of his devices for forensic preservation, inspection, and analysis. *See* Amenn Mem. 1–2; BaseCap Reply 3 n.3.

On November 21, 2023, the Court conducted an evidentiary hearing on BaseCap's motion. BaseCap offered live testimony from Amenn and from Dr. Easttom, BaseCap's forensic expert, as well as documentary evidence to support the declarations and exhibits submitted in connection with the briefing of BaseCap's motion. At the conclusion of that hearing, the Court granted BaseCap's motion for a preliminary injunction, as modified on the record and memorialized in this Memorandum Opinion and Order.

## **LEGAL STANDARD**

A plaintiff seeking a preliminary injunction must demonstrate: "(1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation . . . ; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (cleaned up). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (per curiam) (alteration

in original) (emphasis in original) (internal quotation marks omitted).  "In deciding a motion for [a] preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence."  *Helio Logistics, Inc. v. Mehta*, No. 22-CV-10047 (NSR), 2023 WL 1517687, at *2 (S.D.N.Y. Feb. 3, 2023).

## DISCUSSION

The Court finds that BaseCap has made the clear showing required to establish its entitlement to a preliminary injunction under each of the four preliminary injunction factors.  *See Benihana*, 784 F.3d at 895.

### I. BaseCap Has Established A Likelihood of Success on the Merits

BaseCap has established a likelihood of success on the merits with respect to its breach of contract claim and sufficiently serious questions going to the merits, making fair grounds for litigation, regarding its federal and state trade secret misappropriation claims.

#### a. Breach of Contract Claim

As to its breach of contract claim, BaseCap alleges that Amenn breached the NDIAA primarily by (2) misusing and improperly accessing BaseCap confidential information outside of his job duties pursuant to Section 2.2, and (2) failing to return or certify destruction of BaseCap confidential information following his departure pursuant to Section 2.3.  *See* BaseCap Mem. 11–12.  Under New York law, the elements of breach of contract are "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach."  *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350–51 (2d Cir. 2005).

BaseCap has demonstrated a likelihood of success on the merits of its breach of contract claim.  At a minimum, Amenn concedes that he is not in compliance with the NDIAA, as he has,

4

to date, declined to sign its Exhibit C certifying that he has returned or destroyed BaseCap's confidential information, in breach of Section 2.3. *See* Amenn Supp. Mem. 2; *see also* Smith Decl. ¶ 41; Smith Reply Decl. ¶ 26. Other evidence suggests that Amenn improperly retained BaseCap materials, including BaseCap emails that he filed as exhibits to his response papers. *See* Smith Reply Decl. ¶ 5. And, as further described below with respect to BaseCap's trade secret claims, there is evidence at this stage to permit a strong inference that Amenn is in breach of Section 2.2 by improperly accessing BaseCap's confidential information during and following his employment.

### b. *Trade Secret Claims*

BaseCap has also shown sufficiently serious questions going to the merits of its federal and state common law trade secret claims to make them fair grounds for litigation. "[U]nder the Defend Trade Secrets Act, a party must show an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Helio*, 2023 WL 1517687, at *4 (internal quotation marks omitted). Similarly, under New York law, a party claiming common law misappropriation of trade secrets must demonstrate: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Id.*

BaseCap's evidence in support of its trade secret claims at this stage clearly indicates that the company takes significant measures to keep its trade secrets confidential, including by maintaining security controls, requiring employees to sign nondisclosure agreements, and limiting

the number of employees who have access to the data repository that stores its source code. Smith Decl. ¶¶ 9–19. BaseCap's evidence further suggests that Amenn may have retained BaseCap's trade secrets in breach of the NDIAA or under circumstances that gave rise to a duty to maintain their secrecy. The evidence indicates that Amenn circumvented security software and externally shared a volume of BaseCap data on June 1, 2023. Smith Decl. ¶ 30; Easttom Decl. ¶¶ 21–22. In the following weeks, prior to his departure from BaseCap, Amenn accessed BaseCap information outside the scope of his job duties and while he was on vacation. Smith Decl. ¶ 32; Easttom Decl. ¶ 17. A significant increase in this activity was logged on Amenn's final two days at BaseCap. Smith Decl. ¶ 36; Easttom Decl. ¶ 17. Lastly, Amenn attempted to access BaseCap systems after his termination. Smith Decl. ¶ 37; Easttom Decl. ¶ 13. While the Court cannot and does not rule on the merits, the evidence clearly suggests fair grounds to litigate the merits of BaseCap's trade secret claims.

## II. BaseCap Has Established Irreparable Harm

BaseCap is likely to suffer irreparable harm from Amenn's alleged breaches of contract and misappropriation of trade secrets. "Threatened dissemination of trade secrets generally creates a presumption of irreparable harm." *IDG USA, LLC v. Schupp*, 416 F. App'x 86, 88 (2d Cir. 2011); *see also Helio*, 2023 WL 1517687, at *4 ("Irreparable harm is presumed where a trade secret has been misappropriated."). Moreover, "[a] company's 'loss of reputation, good will, and business opportunities' from a breach of contract can constitute irreparable harm." *Millennial Plastic Surgery PLLC v. James*, No. 21 CIV. 9590 (ER), 2021 WL 5988322, at *2 (S.D.N.Y. Dec. 16, 2021) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)); *see* Smith Reply Decl. ¶ 28 (describing loss of business opportunities with BaseCap investors as a result of litigation); Stein Reply Decl. ¶ 4.

### III. The Balance of Hardships and Public Interest Favor BaseCap

The balance of hardships and public interest also favor BaseCap. First, as to the balance of hardships, the majority of the requested injunction—to which Amenn has consented—requires Amenn simply to abide by the terms of the NDIAA. That Amenn has agreed to most terms of the injunction underscores that they do not present undue hardship to him. And, for the reasons explained above with respect to irreparable harm, BaseCap is likely to suffer hardship if an injunction does not issue.

Second, as to the public interest, "[t]here is a substantial public interest in the protection of trade secrets and proprietary information as well as the enforceability of contracts." *Aventri, Inc. v. Tenholder*, No. 3:18-CV-02071 (KAD), 2018 WL 7348013, at *1 (D. Conn. Dec. 18, 2018).

### IV. No Bond Is Required

Under Rule 65(c) of the Federal Rules of Civil Procedure, a court may "issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, a district court may "dispense with the bond requirement where there has been no proof of likelihood of harm" to the non-movant. *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (internal quotation marks omitted). As ordered below, BaseCap is to bear the cost of forensic analysis in connection with the preliminary injunction, and Amenn otherwise suffers little hardship from the issuance of the injunction. The Court therefore declines to order bond.

### V. Scope of the Injunction

As referenced above, the parties have agreed to the first element of BaseCap's requested injunctive relief, prohibiting Amenn "[f]rom directly or indirectly accessing, disclosing, copying,

7

reproducing, or otherwise conveying, disseminating or using BaseCap's trade secrets and proprietary or confidential information, or any Confidential Information (as that term is defined in the August 2019 Non-Disclosure and Invention Assignment Agreement (the 'Agreement')) between BaseCap and [Amenn], including, but not limited to, any information accessed, downloaded or copied by [Amenn] (collectively 'BaseCap's Trade Secret Information')." BaseCap Mem. 2. The parties have also agreed to element (2)(b) of the requested injunctive relief, requiring Amenn "to immediately return to BaseCap, any and all BaseCap property and BaseCap's Trade Secret Information in whatever form, including by . . . turn[ing] over to BaseCap . . . all copies of non-electronic data of BaseCap in [Amenn's] possession, custody and control." *Id.* Amenn must continue to abide by the terms of this injunctive relief during the pendency of this litigation.

With respect to element 2(a) of BaseCap's requested injunctive relief, *see id.*, the Court orders the parties to meet and confer regarding the identification and retention of an independent, third-party forensic analyst who will conduct an analysis of Amenn's laptop that has been identified as allegedly containing BaseCap's trade secrets. Amenn does not object to this relief. The parties shall agree upon an appropriate protocol, including search terms and any confidentiality stipulations, for such analysis. Amenn's devices may remain in his possession for the duration of the forensic analysis, but Amenn must provide complete and unrestricted access to the forensic analyst and cannot interfere during the analysis. The analysis may be conducted at Amenn's home or at a neutral location of his choosing. BaseCap's counsel may attend the analysis but also cannot interfere with or direct the analysis. The analysis shall be conducted pursuant to the agreed-upon protocol, which shall be provided to the forensic analyst in advance of the analysis. The forensic analysis is not to exceed five hours in duration. BaseCap will bear the cost

of the forensic analysis. The parties are directed file a joint status report by December 8, 2023 informing the Court of the status of their agreement regarding the forensic analysis, including the anticipated date of that analysis. The forensic analyst's findings shall be filed with the Court promptly upon the completion of the analysis.

Because "an injunction that prohibits the use or disclosure of trade secrets or confidential information must also specifically describe the nature of the secrets or confidential information to be protected," *see Expert Connect, LLC v. Parmar*, 773 F. App'x. 651, 653 (2d Cir. 2019) (summary order), the Court attaches a separate Order that sets forth the terms of the preliminary injunction with specificity, as required by Rule 65(d).

### VI. BaseCap's Motions to Seal Are Granted

BaseCap has filed two motions to seal in connection with its opening and reply briefs and associated exhibits on this motion. [ECF Nos. 6, 32]. The motions to seal are GRANTED. IT IS FURTHER ORDERED that the transcript of the preliminary injunction hearing held on November 21, 2023 shall be filed under seal.

### CONCLUSION

For the foregoing reasons, BaseCap's motion for a preliminary injunction is GRANTED as modified as set forth herein and in the attached preliminary injunction Order. BaseCap's motions to seal are GRANTED. The parties are DIRECTED file a joint status report by December 8, 2023 regarding the anticipated forensic analysis. The Clerk of Court is respectfully requested to terminate the motions pending at docket entries 5, 6, and 32.

**SO ORDERED.**

Date: **November 22, 2023**
    **New York, NY**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**