**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/22/2024
```

BASECAP ANALYTICS, INC.

          Plaintiff,

    v.

ROBERT AMENN,

          Defendant.

Civ. No. 23-cv-9370-MKV-RWL

## PROTECTIVE ORDER

WHEREAS Plaintiff BaseCap Analytics Inc. ("Plaintiff") and Defendant Robert Amenn ("Defendant") recognize that sensitive and confidential information will be exchanged in this action, the Parties stipulate and agree as follows:

1.    **Applicability of this Protective Order**: This Proposed Protective Order for Confidential Information (the "Protective Order") shall govern any trial, proceedings, or hearings held in this action, and will also govern the handling of documents, testimony, depositions, trial, proceeding and hearing transcripts and exhibits marked in any of the foregoing, interrogatory responses, responses to requests for admissions, responses to requests for production of documents, data retrieved from any forensic examination ordered by the Court ("Forensic Examinations") and all other discovery obtained pursuant to the Federal Rules of Civil Procedure or other legal process by or on behalf of a party or third party in connection with this action ("Discovery Material"). As used herein, "Producing Party" shall refer to the party or third party that provides testimony or produces documents or other information in connection with this action; "Receiving Party" shall refer to the party in this action that receives such information. In the case of data retrieved from Forensic Examination of Defendant's laptop (a protocol for which appears at ECF 80), or from any other device, media or account of Defendant, Defendant shall be considered the Producing Party and Plaintiff shall be considered the Receiving Party.

1

2.    **Designation of Information**:  There shall be two tiers of designations under this protective order: "Highly Confidential" and "Highly Confidential - Source Code."

(a)    A party may use the "Highly Confidential" designation for any data or information that constitutes, reflects, or discloses non-public know-how, proprietary data, marketing information, financial information, and/or commercially sensitive business information or data which the designating party in good faith believes in fact is confidential or the unprotected disclosure of which might result in economic or competitive injury and which is not publicly known and cannot be ascertained from an inspection of publicly available documents, materials, or devices. The Highly Confidential designation may also be used for non-public information, the disclosure of which would create a substantial risk of serious harm that could not be avoided by less restrictive means, which may include trade secrets; user data and associated security features; pricing and client information; forecasts, budgets, sales initiatives, and profit generation information; business dealing(s) with customers/prospective customers; proprietary marketing plans and analyses; information related to business competition of the Producing Party; and other related and/or similar information, as well as sensitive personal information that is not otherwise publicly available, such as home addresses; Social Security numbers; dates of birth; employment personnel files; medical information; home telephone records/numbers; employee disciplinary records; wage statements or earnings statements; employee benefits data; tax records; and other similar personal financial information.

(b)    A party may use the "Highly Confidential - Source Code" designation for any Highly Confidential Information as defined in paragraph 2(a) above that also consists of or represents computer code and associated comments and revision histories, formulas, or specifications that define or otherwise describe in detail the algorithms or structure

of software/source code, the disclosure of which would create a substantial risk or serious harm

that could not be avoided by less restrictive means.

      (c)     All source code found on or in a laptop, device, media or account

of Defendant, including but not limited to during any Forensic Examination, will be designated

"Highly Confidential - Source Code."

    3.    **Persons Authorized to Receive Highly Confidential Information.** The

following persons may have access to materials designated as "Highly Confidential":

      (a)     Archer Hall;

      (b)     The parties, in the manner set forth in the Protocol entered by the

Court at ECF No. 80;[1]

      (c)     Outside counsel for a party who has formally appeared in this

action (including legal assistants, clerical personnel, and paralegals employed by such counsel);

      (d)     Outside contractors or consultants utilized for litigation services[2]

and/or trial preparation who have signed the form attached hereto as Exhibit A;

      (e)     Individuals at or affiliated with any insurer with responsibility for

managing this litigation who have signed the form attached hereto as Exhibit A;

      (f)     This Court, including any appellate court, its support personnel,

and court reporters;

      (g)     Stenographers engaged to transcribe depositions in this action;

---

[1] Pursuant to Paragraph 7(c) of the Forensic Search Protocol entered by the Court at ECF 80, all data extracted from Defendant's laptop other than emails claimed to be Litigation Emails by Defendant may be accessed by Defendant only using a program such as Relativity without any ability to copy, print, transmit or download any such documents.  Defendant may not screenshot, manually copy, or otherwise capture any extracted data, and a log will be maintained of files viewed, dates, times and duration of Defendant's viewing of such information.

[2] This includes hosting of the Relativity platform to be accessed by the parties in this case, as referenced in Paragraph 7(c) of the Forensic Search Protocol entered by the Court at ECF 80.

(h)     Consulting or testifying experts retained by counsel for a party (the "Retaining Party") in connection with this proceeding and who have signed the form attached hereto as Exhibit A;

(i)     A testifying witness at any deposition or other proceeding in this action who is the author, sender, recipient, or otherwise involved in the subject matter described in the Highly Confidential Information; and

(j)     Any other person as to whom the parties in writing agree or that the Court in these proceedings designates, who have signed the form attached hereto as Exhibit A.

4.      **Persons Authorized to Receive Highly Confidential - Source Code Information.** The following persons may have access to materials designated as "Highly Confidential - Source Code:"

(a)     Archer Hall;

(b)     Plaintiff, only in the case of source code which Archer Hall confirms is BaseCap or BaseCap client source code;

(c)     Defendant, only in the case of source code which Archer Hall confirms is not BaseCap or BaseCap client source code, in the manner set forth in the Protocol entered by the Court at ECF No. 80;[3]

(d)     Outside counsel for a party who has formally appeared in this action (including legal assistants, clerical personnel, and paralegals employed by such counsel);

---

[3] Pursuant to Paragraph 7(c) of the Forensic Search Protocol entered by the Court at ECF 80, all data extracted from Defendant's laptop other than emails claimed to be Litigation Emails by Defendant may be accessed by Defendant only using a program such as Relativity without any ability to copy, print, transmit or download any such documents.  Defendant may not screenshot, manually copy, or otherwise capture any extracted data, and a log will be maintained of files viewed, dates, times and duration of Defendant's viewing of such information.

(e)     Outside contractors or consultants utilized for litigation services[4] and/or trial preparation who have signed the form attached hereto as Exhibit A;

(f)     Up to two (2) consulting or testifying experts of a Retaining Party specifically identified as eligible to access Source Code who have signed the form attached hereto as Exhibit A;

(g)     The Court, its technical advisor (if one is appointed), court personnel, and court reporters or videographers recording testimony or other proceedings in this action, except that copies of Source Code marked as exhibits in a deposition, trial or other hearing shall not be provided to the Court Reporter or attached to deposition, trial or other hearing transcript; the transcript shall instead identify the exhibit by bates number; and

(h)     While testifying at deposition, trial or other hearing in this action only: (i) any current or former officer, director or employee of the Producing Party or original source of the information; (ii) any person designated by the Producing Party to provide testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; (iii) any person who authored, previously received (other than in connection with this litigation), or was directly involved in creating, modifying, or editing the Source Code; and/or (iv) any expert designated by the Producing Party. No person authorized to view Source Code pursuant to this sub-paragraph other than an expert designated in this action may retain or be given copies of the Source Code except while so testifying.

5.     Prior to (i) disclosing a Producing Party's Highly Confidential or Highly Confidential - Source Code Information to a Receiving Party's expert or consultant, or (ii)

---

[4] This includes hosting of the Relativity platform to be accessed by the parties in this case, as referenced in Paragraph 7(c) of the Forensic Search Protocol entered by the Court at ECF 80.

disclosing a Producing Party's Highly Confidential Information to a person proposed to be considered for disclosure pursuant to paragraph 3(i), the Receiving Party must serve via e-mail to the Producing Party a signed copy of the Acknowledgement attached hereto as Exhibit A and in the case of a proposed expert or consultant under Paragraphs 3(h) or 4(f), the expert or consultant's resume.  The Receiving Party will then have five business days to object to the disclosure of information to such person, counting the day of receiving the email as day 1.  If no objection is made, disclosure may be made after the fifth business day, however if an objection is made, no disclosure can be made until the dispute is resolved by the Court.  Execution of an Acknowledgment is an express agreement to be subject to the jurisdiction of this Court in connection with any proceeding or hearing relating to such Highly Confidential Information or to this Protective Order, including any proceeding relating to the enforcement of this Protective Order.

6.      Highly Confidential and/or Highly Confidential - Source Code Information, or the substance or content thereof, including any notes, memoranda or other similar documents relating thereto, shall not be disclosed to anyone other than a person permitted to have access to the same under the terms of this Protective Order.

7.      Any party or non-party may designate deposition, trial and other testimony (including exhibits) as "Highly Confidential" or "Highly Confidential - Source Code" by indicating on the record at the time the testimony is given or within thirty (30) calendar days of receiving the final transcript that the entire testimony or portions thereof shall be designated as "Highly Confidential" or "Highly Confidential - Source Code." If a designation is made via a statement on the record during a deposition, trial or hearing, counsel must follow up in writing within thirty (30) calendar days of receiving the final transcript, identifying the specific pages and lines containing the Highly Confidential and/or Highly Confidential - Source Code

Information. If no confidentiality designations are made within the thirty (30) calendar day period, the entire transcript shall be considered non-confidential. During the thirty (30) calendar day period, the entire transcript and video shall be treated as Highly Confidential Information. All originals and copies of deposition, trial or hearing transcripts that contain Highly Confidential and/or Highly Confidential - Source Code Information shall be prominently marked as such on the cover page thereof and, if filed with the Court, the portions of such transcript so designated shall be filed under seal. Any DVD or other digital storage medium containing Highly Confidential or Highly Confidential - Source Code deposition testimony shall be labeled accordingly.

8.      Nothing in this Protective Order shall bar or otherwise restrict any counsel from rendering advice to his or her client with respect to this litigation and, in the course thereof, referring to or relying generally upon his or her examination of materials designated "Highly Confidential" and/or "Highly Confidential - Source Code" provided, however, that in rendering such advice and in otherwise communicating with his or her client, the counsel shall not disclose the content or the source of any Highly Confidential and/or Highly Confidential - Source Code Information contrary to the terms of this Protective Order.

9.      The provisions of this Protective Order shall also apply to materials and deposition, trial and other hearing testimony produced or provided by non-parties in discovery in this action, and non-parties may designate their materials, deposition, trial or other hearing testimony as Highly Confidential or Highly Confidential - Source Code in accordance with the provisions of this Protective Order.

10.     The Parties reserve the right to seek a modification of this Protective Order if good cause exists to do so.

11.     If a Receiving Party (a) is subpoenaed in another action or proceeding, (b) is served with a demand in another action or proceeding in which it is a party, or (c) is served with any legal process by one not a party to this Protective Order, seeking materials which were produced or designated as Highly Confidential and/or Highly Confidential - Source Code Information pursuant to this Protective Order, the Receiving Party shall give prompt actual written notice by e-mail to the Producing Party no later than within five (5) business days after receipt of such subpoena, demand or legal process or such shorter notice as may be required to provide other parties with the opportunity to object to the immediate production of the requested discovery materials to the extent permitted by law. In the event a Producing Party objects to the production of the Highly Confidential and/or Highly Confidential - Source Code Information in any manner, the Receiving Party shall not disclose or produce any Highly Confidential and/or Highly Confidential - Source Code Information absent a direct court order to do so. Compliance by the Receiving Party with any order directing production pursuant to a subpoena of any Highly Confidential and/or Highly Confidential - Source Code Information shall not constitute a violation of this Protective Order. Nothing in this Protective Order shall be construed as authorizing a party to disobey a lawful order issued in another action.

12.     Within thirty (30) calendar days after the final disposition of this action, all Highly Confidential and/or Highly Confidential - Source Code Information produced by a Producing Party (including, without limitation, any copies, extracts or summaries thereof) shall be destroyed by the Receiving Party.  Each Receiving Party shall, at the time of such destruction, deliver a declaration under oath to all Parties (or third parties as applicable), affirming that all such Highly Confidential and/or Highly Confidential - Source Code Information (including, without limitation, any copies, extracts or summaries thereof) has been destroyed.  Failure to timely provide the declaration required by this paragraph shall be a violation of this Protective

Order, and any Party that violates this paragraph shall reimburse all legal fees and costs associated with enforcement of the obligations contained in this paragraph.  Notwithstanding this paragraph, Plaintiff shall not be required to destroy any of its own or its clients' information retrieved during any Forensic Examination.

13.     This Protective Order may be signed in counterparts, and a "PDF" signature shall have the same force and effect as an original ink signature. The obligations of this Protective Order shall survive the termination of the action, and the Court shall retain jurisdiction to resolve any dispute concerning the use of information disclosed hereunder.

14.     In accordance with paragraph 2 of this Court's Individual Practices, any party filing documents under seal must simultaneously file with the Court a letter brief and supporting declaration justifying - on a particularized basis - the continued sealing of such documents. The parties should be aware that the Court will unseal documents if it is unable to make "specific, on the record findings ... demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).

15.     The Court also retains discretion whether to afford confidential treatment to any Discovery Material designated as Highly Confidential and submitted to the Court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court. All persons are hereby placed on notice that the Court is unlikely to seal or otherwise afford confidential treatment to any Discovery Material introduced in evidence at trial, even if such material has previously been sealed or designated as Highly Confidential.

**Plaintiff's Counsel**                                      **Defendant Robert Amenn**

_____              _____
Marjorie Peerce                                             Robert Amenn
Wendy R. Stein
1675 Broadway, 19th Floor
New York, NY 10019
Email: peercem@ballardspahr.com
Email: steinw@ballardspahr.com

Madhundra Sivakumar
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Email: sivakumarm@ballardspahr.com

Andrew Hensley
1 E. Washington St., #2300
Phoenix, AZ 85004

                                                      **SO ORDERED:**

Dated:  March 22, 2024                                 _____

                                                      ROBERT W. LEHRBURGER

## EXHIBIT A

I, _____ , acknowledge and

declare that I have received a copy of the Protective Order ("Order") in *BaseCap Analytics, Inc. v.*

*Amenn*, No. 23-cv-9370-MKV-RWL.  Having read and understood the terms of the Order, I agree

to be bound by the terms of the Order and irrevocably and exclusively consent to the jurisdiction

of said Court for the purpose of any proceeding to enforce the terms of the Order.


Name of individual:

Present occupation/job description:

Name of Company or Firm:

Address:


I declare under penalty of perjury that the foregoing is true and correct.


Dated:


_____


Signature

**EXHIBIT B**

EMPLOYEE NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT

I, **Robert Amenn**_____, am about to become an employee of BaseCap Analytics Inc., a Delaware corporation (the "**Company**").  I am making this Agreement in consideration of my employment with the Company.  This agreement applies to the entire period of my employment.

1.      Representations and Warranties; Covenants.

        1.1     **No Conflict with any Other Agreement or Obligation**. I represent and warrant that I am not bound by any agreement or arrangement with or duty to any other person that would conflict with this agreement.  Except for any obligation described on Exhibit A attached to this agreement, I do not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that I learned of during any previous engagement, employment or association nor have I had any obligation to assign contributions or inventions of any kind to any other person. I shall not disclose to the Company or induce the Company to use any proprietary, trade secret or confidential information or material belonging to others.

        1.2     **No Infringement of Third Party Intellectual Property Rights**. I represent and warrant that the Inventions (as defined in Section 3 below) will not infringe any patent, copyright, trade secret or other proprietary right of any third party.

        1.3     **Open Source**. I represent and warrant that the Inventions will not include any open source software, except with the prior written consent of the Company.  If open source software is included in the Inventions, I agree to maintain for the Company a regularly updated record of all such open source software.

2.      Confidential Information.

        2.1     **Definition of Confidential Information**.  "Confidential Information" means all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that the Company is obligated to treat as confidential or proprietary, and any other technical, operating, financial and other business information that has commercial value, relating to the Company, its business, potential business, operations or finances, or the business of the Company's affiliates or customers, of which I may have acquired or developed knowledge or of which I may in the future acquire or develop knowledge of during my work for the Company, or from my colleagues while working for the Company.

        2.2     **Protection of Confidential Information**.  I will use the Confidential Information only in the performance of my duties for the Company.  I will not disclose the Confidential Information, directly or indirectly, at any time during or after my employment with the Company except to persons authorized by the Company to receive this information.  I will not use the Confidential Information, directly or indirectly, at any time during or after my employment with the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company.  I will take all action reasonably necessary to protect the Confidential Information from being disclosed to anyone other than persons authorized by the Company.  I acknowledge that I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret if (a) I make such disclosure in confidence to a federal, state, or local government

1

official, either directly or indirectly, or to an attorney and such disclosure is made solely for the purpose of reporting or investigating a suspected violation of law; or (b) I make such disclosure in a complaint or other document filed in a lawsuit or other proceeding if such filing is made under seal.

2.3     **Return of Confidential Information.**  When my employment with the Company terminates, I will immediately return or destroy all materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium) containing, summarizing, abstracting or in any way relating to the Confidential Information.  At the time I return these materials I will acknowledge to the Company, in writing and under oath, in the form attached as Exhibit C, that I have complied with the terms of this agreement.

3.     Inventions.

3.1     **Definition of Inventions.**  The term "**Inventions**" means:

(a)     contributions and inventions, discoveries, creations, developments, improvements, works of authorship and ideas (whether or not they are patentable or copyrightable) of any kind that are conceived, created, developed or reduced to practice by me, alone or with others, while employed by the Company that are either:  (i) conceived during regular working hours or at my place of work, whether located at Company, affiliate or customer facilities, or at my own facilities; or (ii) regardless of whether they are conceived or made during regular working hours or at my place of work, are directly or indirectly related to the Company's business or potential business, result from tasks assigned to me by the Company, or are conceived or made with the use of the Company's resources, facilities or materials; and

(b)     any and all patents, patent applications, copyrights, trade secrets, trademarks, domain names and other intellectual property rights, worldwide, with respect to any of the foregoing.

(c)     The term "Inventions" specifically excludes any inventions I developed entirely on my own time without using any Company equipment, supplies, facilities or trade secret information, unless (i) the invention related at the time of conception or reduction to practice of the invention to (A) the Company's business, or (B) the Company's actual or demonstrably anticipated research or development, or (ii) the invention results from any work performed by me for the Company.

3.2     **All Inventions are Exclusively the Property of the Company.**  (a)  I will promptly disclose all Inventions, in full detail, to persons authorized by the Company.  I will not disclose any Invention to anyone other than persons authorized by the Company, without the Company's express prior written instruction to do so.

(b)     All Inventions will be deemed "work made for hire" as that term is used in the U.S. Copyright Act, and belong solely to the Company from conception.  I hereby expressly disclaim all interest in all Inventions.  To the extent that title to any Invention or any materials comprising or including any Invention is found not be a "work made for hire" as a matter of law, I hereby irrevocably assign to the Company all of my right, title and interest to that Invention.  At any time during or after my employment with the Company that the Company requests, I will sign whatever written documents of assignment are necessary to formally evidence my irrevocable assignment to the Company of any Invention.

(c)     At all times during or after my employment with the Company I will assist the Company in obtaining, maintaining and renewing patent, copyright, trademark and other appropriate protection for any Invention, in the United States and in any other country, at the Company's expense.

3.3     **Excluded Information**.   On Exhibit B attached to this agreement I have included a complete list, with nonconfidential descriptions, of any inventions, ideas, reports and other creative works that I made or conceived prior to my employment with the Company (collectively, the "**Excluded Information**").   I intend that the items on that list and only the items on that list shall be excluded from the restrictions set forth in this agreement.  I will not assert any right, title or interest in or to any Invention or claim that I made, conceived or acquired any Invention before my employment with the Company unless I have specifically identified that Invention on the attached Exhibit B. In the event that any Excluded Information is incorporated into any Invention, I hereby grant Company a perpetual, worldwide, royalty free, non-exclusive license to use and reproduce the Excluded Information for commercial, internal business and all other purposes.

4.     **Non-Solicitation; Non-Compete.**  In order to protect the legitimate business interests of the Company and in consideration of the Company's willingness to provide to me access to its Confidential Information, I agree that during the period beginning on the initial date of my employment with the Company and ending one (1) year after termination of my employment with the Company for any reason, I will not directly or indirectly, whether as owner, sole proprietor, partner, shareholder, director, member, consultant, agent, founder, co-venture partner or otherwise, (i) do anything to divert or attempt to divert from the Company any business of any kind, including, without limitation, solicit or interfere with any of the Company's customers, clients, members, business partners or suppliers, (ii) solicit, induce, recruit or encourage any person engaged or employed by the Company to terminate his or her employment or engagement, or (iii) engage, invest or participate in any business that is similar to those which the Company has created, has under development or are the subject of active planning from time to time during my employment with the Company, provided, however, that I may own, as a passive investor, publicly-traded securities of any corporation that competes with the business of the Company so long as such securities do not, in the aggregate, constitute more than three percent (3%) of any class of outstanding securities of such corporations.

5.     **Miscellaneous**.

5.1     **Interpretation and Scope of this Agreement.**   Each provision of this agreement shall be interpreted on its own.  If any provision is held to be unenforceable as written, it shall be enforced to the fullest extent permitted under applicable law.  In the event that one or more of the provisions contained in this agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, then it shall (a) be enforced to the fullest extent permitted under applicable law and (b) such unenforceability shall not affect any other provision of this agreement, but this agreement shall then be construed as if such unenforceable portion(s) had never been contained herein.

5.2     **Remedies.**  I understand and agree that if I breach or threaten to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm and that monetary damages would be an inadequate remedy.  I agree that, in the event of my breach or threatened breach of any of the provisions of this agreement, the Company shall have the right to seek relief from a court to restrain me (on a temporary, preliminary and permanent basis) from using or disclosing Company Confidential Information or Inventions or otherwise violating the provisions of this agreement, and that any such restraint shall be in

addition to (and not instead of) any and all other remedies to which the Company shall be entitled, including money damages.  The Company shall not be required to post a bond to secure against an imprudently granted injunction (whether temporary, preliminary or permanent).

       5.3    **Governing Law; Jury Waiver; Consent to Jurisdiction.**  This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the state of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof.  For all matters arising directly or indirectly from this Agreement ("**Agreement Matters**"), I hereby (a) irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the state of New York that is located in the county of New York (and of the appropriate appellate courts from any of the foregoing) in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding ("**Proceeding**") directly or indirectly arising out of or relating to any Agreement Matter; provided that a party to this Agreement shall be entitled to enforce an order or judgment of any such court in any United States or foreign court having jurisdiction over the other party, (b) irrevocably waive, to the fullest extent permitted by law, any objection that I may now or later have to the laying of the venue of any such Proceeding in any such court or that any such Proceeding which is brought in any such court has been brought in an inconvenient forum, (c) irrevocably waive, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (d) irrevocably waive, to the fullest extent permitted by law, any right to a trial by jury in connection with a Proceeding, (e) covenant that I will not, directly or indirectly, commence any Proceeding other than in such courts and (f) agree that service of any summons, complaint, notice or other process relating to such Proceeding may be effected in the manner provided for the giving of notice as set forth in this agreement.

       5.4    **Entire Agreement; Amendments and Waivers.**  This agreement (including the exhibits attached hereto) represents the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and can be amended, supplemented, or changed and any provision hereof can be waived, only by written instrument signed by the party against whom enforcement of any such amendment, supplement, change or waiver is sought.

       5.5    **Captions**.  The captions and section headings in this agreement are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this agreement.

       5.6    **Counterparts; Binding Effect.**  This agreement may be executed in counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same agreement.  Except as otherwise expressly provided herein, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

       5.7    **Notices**.  All notices and other communications given or made pursuant to this agreement shall be in writing and shall be deemed effectively given:  (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt.

All communications to me shall be sent to the respective parties at their address as set forth on the signature page of this agreement, or in the Company's records, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section and all notices to the Company shall be provided to the Company's headquarters, attention Steven Smith.  If notice is given to the Company, a copy (which shall not itself constitute notice) must also be sent to Evan Bienstock at Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020.

[*Signature Page Follows*]

5

By signing this agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this agreement and understand its terms including that it places significant restrictions on me.

EMPLOYEE:

By: _____

Name: **Robert Amenn**

Address: **319 13TH ST**

**Gold Bar, WA 98251**

Date: **8/14/2019**


Accepted by Company:

BASECAP ANALYTICS INC.

By: _____

Name: **Steven Smith**

Title: **CEO and President**

Date: **8/14/2019**

*[Signature Page to BaseCap Analytics Inc. Non-Disclosure and Invention Assignment Agreement]*

EXHIBIT A

Obligations to Other Persons:
[Securely attach additional pages if necessary]

**none**

*[If this exhibit is left blank, the employee shall be deemed to represent that he/she does not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that he/she learned of during any previous engagement, employment or association nor has he/she had any obligation to assign contributions or inventions of any kind to any other person.]*

EXHIBIT B

Excluded Information:
[Securely attach additional pages if necessary]

n/a

*[If this exhibit is left blank, the employee shall be deemed to represent that he/she does not have any Excluded Information.]*

EXHIBIT C
**Form of Acknowledgment**

My employment by BaseCap Analytics Inc. (the "Company") is now terminated.  I have reviewed my Non-Disclosure and Invention Assignment Agreement with the Company, dated _____ ___, 201_ (the "Agreement"), and I swear, under oath, that:

• I have complied and will continue to comply with all of the provisions of the Agreement.

• I understand that all of the Company's materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium), whether or not they contain Confidential Information (as that phrase is defined in the Agreement), are and remain the property of the Company.  I have delivered to authorized Company personnel, or have destroyed, all of those documents and all other Company materials in my possession.

_____
Signature

_____
Name (please print clearly)

_____

_____
Address